**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**



FILED BY _____ D.C.

AUG 07 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Grace D. Solis and
Shirley J. Solis
    Plaintiff

v.                          Case No.  1:19-cv-24042-KMW

CITIBANK, N.A. and
CITIMORTGAGE, INC.
    Defendants

## SECOND AMENDED COMPLAINT

Plaintiffs, Grace D. Solis ("Solis1") and Shirley J. Solis ("Solis2), hereby sue Defendants,

CITIBANK , N.A. (CITI) and CITIMORTGAGE (CMI) for violations of the Florida Consumer

Collection Practices Act (FCCPA), FLA. STAT. §559 (Part IV), Fair Credit Reporting Act, 15

U.S.C. §1681, Regulation Z Truth in Lending Act (TILA), 15 U.S.C. §1601 et seq., RESPA 12

U.S.C. § 2605(e), the Fair Credit Billing Act 15 U.S.C§ 1666 and breach of contract.

## PRELIMINARY STATEMENT

1.   This is an action for damages and injunctive relief brought by Plaintiffs against

Defendants for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692,

the Florida Consumer Collection Practices Act (FCCPA), FLA. STAT. §559 (Part VI)

494.00794, Fair Credit Reporting Act 15 U.S.C. §1681, Regulation Z Truth in Lending Act

(TILA), 15 U.S.C. §1601 et seq., RESPA 12 U.S.C. §2605(e), TILA, the Fair Credit Billing Act

15 U.S.C§ 1666 and breach of contract.  Upon belief and information, Plaintiffs contend that

many of these practices are widespread for some or all of the Defendants.  Plaintiffs intend to

propound discovery to Defendants identifying these other individuals who have suffered similar

violations.

1

2.    Plaintiffs contend that the Defendants have violated such laws by repeatedly harassing Plaintiffs in attempts to collect a consumer debt.

## JURISDICTION AND VENUE

3.    Jurisdiction of this Court arises under 15 U.S.C. §1681p, Fla. Stat. §47.051, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

4.    Venue is proper pursuant to 28 U.S.C. §1391b and Fla. Stat. §559.77.  Venue in this District is proper in that the Plaintiff resides here, the Defendants transact business here, and the conduct complained of occurred here.

5.    This is an action for damages which exceed $104,000.00

## PARTIES

6.    Plaintiffs, Grace D. Solis and Shirley J. Solis are natural persons, consumers as defined by the FDCPA, 15 U.S.C. § 1692a(3), FCRA 15 U.S.C. § 1681a(c) and the FCCPA, Fla. Stat. §559.55(2) and are residents of the State of Florida.

7.    Upon information and belief Defendant CITIBANK, N.A. ("CITI") is the consumer division of financial services multinational Citigroup. Citibank was founded in 1812 as the City Bank of New York, and later became First National City Bank of New York.  CITI is authorized to do business in Florida, as defined under the FCCPA, Fla. Stat. §559.55(6), is a creditor as defined under the FDCPA 15 U.S.C. §1692a(4), FCCPA , Fla. Stat. §559.55(3) and a furnisher of information as defined by 15 U.S.C. § 1681s-2 and a "user of information" as defined by 15 U.S.C. §1681m.

8.    Upon information and belief Defendant CITIMORTGAGE ("CMI") is an entity authorized to do business in Florida and a creditor as defined under the FDCPA 15 U.S.C. §1692a(4) FCCPA,

Fla. Stat. §559.55(3), a servicer and a furnisher of information as defined by 15 U.S.C. § 1681s-2 and a "user of information" as defined by 15 U.S.C. §1681m.

9.    Upon information and belief Defendant CITIBANK, FEDERAL SAVINGS BANK ("CITI FSB") is an unknown entity not authorized to do business in Florida and was a creditor as defined under the FCCPA, Fla. Stat. §559.55(3).

## FACTUAL ALLEGATIONS

10.   On September 2, 2005, Solis1 executed a second position Home Equity Line of Credit Agreement and Disclosure with CITI, FSB on her homestead with the maximum amount of $104,000.00 (Exhibit A).

11.   On September 2, 2005, Plaintiffs executed the Home Equity Line of Credit Mortgage (Exhibit B).

12.   CITI, FSB failed to provide to Plaintiffs the Home Equity Line of Credit (HELOC) booklet.

13.   The HELOC's rate was adjustable, the first 120 payments were interest only and the Agreement states:

**HOW FINANCE CHARGES ARE IMPOSED AND DETERMINED**:

b) The appropriate margin is added to the index to determine the Annual Percentage Rate, which will be divided by 365 (366 in leap years) to determine the Daily Periodic Rate which will be applied to the balance on which the Finance Charge will be computed during your monthly billing cycle.

14. In CITI, FSB's **HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE, CITI, FSB** states:

**YOUR RIGHTS AND CITIBANK'S RESPONSIBILITIES AFTER CITIBANK RECEIVES YOUR WRITTEN NOTICE**

3

> Citibank must acknowledge your letter within 30 day, unless Citibank has corrected the error
> by then.  Within 90 days, Citibank must either correct the error or explain why Citibank
> believes the bill was correct.
>
> After Citibank receives your letter, Citibank cannot try to collect any amount you question, or
> report you as delinquent.  Citibank can continue to bill you for the amount you question,
> including Finance Charges, and Citibank can apply any unpaid amount against your credit
> limit.  You do not have to pay any questioned amount while Citibank is investigating, but you
> are still obligated to pay the parts of your bill that are not in question. (page 8 of 9).

15. In November of 2010, Plaintiffs discovered that there were allegations of fraud in the
mortgage industry and were concerned that the calculation of the interest rates and the interest
amount due for HELOC was affected.

16. Had Plaintiffs had been aware of fraud in the mortgage industry prior to obtaining the
HELOC, Plaintiffs would never have obtained the HELOC.

17. According to the terms of the HELOC, the interest would be calculated by a margin and
index while never providing which margin and index would be utilized.

18. Solis1 had made five years' worth of payments on time and withheld her interest payment
in November 2010 while requesting information regarding how the interest was calculated.

19. On November 19, 2010, Solis1 sent a Qualified Written Request, debt validation letter
and requested CITI to refrain from negative reporting to the credit bureaus until CITI responded
under RESPA 12 U.S.C. Section 2605(e) and Regulation X at 24 C.F.R. 3500, TILA,  and the
GRAMM LEACH BLILEY ACT to CITI, the alleged servicer of the HELOC, via certified mail
#7001 2510 0008 9411 2081, received by CITI on November 27, 2010 (Exhibit C).

20. The November 19, 2010 letter requested a complete accounting of the HELOC to date
and all transfers and charges upon the account and CITI never responded.

4

21. Defendants never responded to Solis1's letter and reported negative information to the three consumer reporting agencies (CRAs), EXPERIAN (EXP), TRANSUNION (TU) and EQUIFAX (EFX) contrary to their agreement.

22. On February 3, 2011, Solis1 mailed dispute letters via certified mail to the CRAs regarding CITI'S negative reporting of her HELOC tradeline and informed them that the HELOC tradeline account was in dispute (Exhibit D).

23. Upon information and belief, the CRAs forwarded Solis1's dispute for re-investigation and it was received by the Defendants.

24. Upon information and belief, TU informed CITI that it deleted the tradeline.

25. TransUnion's action regarding the deletion of the tradeline should have triggered the CITI'S duty to notify all CRAs to which it has furnished the same information of the correction.

26. Experian and Equifax continued to report the account as disputed.

27. In February 2011, Solis1 complained to the Office of the Comptroller of the Currency (OCC), Administrator of National Banks regarding CITI's failure to respond to Solis1's letter via certified mail #7010 0780 0001 7592 8555 and received a response dated March 14, 2011 (Exhibit E).

28. On February 28, 2011, Morris Hardwick and Schneider (MHS), CITI'S counsel, sent a dunning letter allegedly on behalf of Defendant CITI with the outstanding amount of $105,152.65 due as of March 19, 2011.

29. On March 4, 2011, Solis1 responded to MHS informing them that Plaintiff was waiting for a response to her QWR and sent a copy of it to MHS's two offices via certified mail #7010 0780 0001 7592 8531 and certified mail #7010 0780 0001 7592 8548.

30. The OCC stated they contacted the bank requesting a response on Solis1's behalf.

31. Solis1 never received a response to her QWR from Defendant CITI as instructed by the OCC.

32. On March 4, 2011, Solis1 sent a second QWR to Defendant CITIBANK via certified mail #7010 0780 0001 7592 8593 received on March 7, 2011 (Exhibit F).

33. Solis1 never received a response to her second QWR to Defendant CITIBANK.

34. On January 19, 2012, Solis1 mailed another QWR and debt validation letter to CITI requesting an accounting regarding how the amounts due (which were interest) were calculated via certified mail #7007 0220 0001 5134 8741, received by CITI on January 23, 2012 (Exhibit G).

35. CITI never responded to Solis1's letter.

36. Instead, on July 21, 2012, Plaintiffs were served with a Summons for State Court Case #12-27962CA04 from CITIBANK with MHS as the attorney.

37. The verification of the Complaint contained this information:

　　CITIBANK, NA SUCCESSOR BY MERGER WITH CITICORP TRUST BANK, FSB.

38. There is no recorded assignment in public records from Defendants CITIBANK FSB to CITICORP to CITIBANK as required by FL Statute 559.715.

39. Defendants CITIBANK FSB, CITICORP and CITIBANK are three separate companies with their own addresses and registered agents.

40. CITI reported inaccurate negative information regarding the amount of interest owed to the three Credit Reporting Agencies regarding Plaintiff's account since February 2011.

41. CITI received Plaintiff1's disputes and continued to report inaccurate information regarding the amount of interest owed to the credit reporting agencies (CRAs).

42. On August 9, 2012, Plaintiff filed a Notice of Dispute into the state action pursuant to 15 U.S.C. § 1692g(b) to Defendants CITIBANK and MHS requesting the name and address of the original creditor including the chain of title to the debt.

43. Defendant CITI and MHS did not respond to Plaintiff's Notice of Dispute.

44. Solis1 sent CITI a QWR on August 14, 2013 via certified mail #7007 0220 0001 5134 8260 and began also requesting the margins and indices in order to calculate if the interest amount charged and owed was accurate (Exhibit H).

45. Plaintiffs retained an attorney and the state foreclosure case was voluntarily dismissed on February 5, 2014.

46. Solis1 re-disputed the accuracy of the CITIBANK tradeline on her Experian and Equifax due to the incorrect interest and past due amounts reported on the credit reports on October 30, 2015 and July 30, 2015 respectively (Exhibit I).

47. Upon information and belief, CITI received Solis1's dispute through the CRAs and failed to conduct a reasonable re-investigation regarding the interest owed and the past amounts due despite receiving the multiple QWRs and debt validations sent by Solis1 disputing the accuracy of the interest amount owed and merely confirmed that the tradeline was correct.

48. Since November 2010 through November 2018, Solis1 repeatedly requested via certified mail, debt validation letters and Qualified Written Request letters requesting clarification regarding interest past amounts due, the calculations of the interest due according to the monthly Summary of Account Activity statements received by Solis1 pursuant to the Fair Credit Billing Act, Fair Debt Collection Practices Act, Florida Consumer Collection Practices Act, RESPA and TILA.

49. Solis1 repeatedly requested the indices and margins used to calculate the interest on the loan due to the London Interbank Offered Rate (LIBOR) scandal wherein CITI was one of the accused companies alleged to have manipulated the LIBOR rate and the case was settled with the US Government.

50. To date, Defendants have NEVER provided the margins and indices used to calculate the interest owed despite it being continually requested by Solis1 thus the amount allegedly owed could be incorrect.

51. On or about January 2018, Solis1 noticed a letter from CITI dated October 5, 2016 amongst her paperwork (Exhibit J).

52. The October 5, 2016 letter stated that it decelerated the loan and Plaintiffs were no longer obligated to pay immediately all sums due and owing on the loan.

53. Thereafter, Defendants repeatedly sent monthly Summary of Account Activity to Solis1 and the amounts due and owing before and after that October 5, 2016 letter (Exhibits K and L).

54. Defendants continued to report the incorrect interest and past amounts due and owed to Experian and Equifax.

55. On or about January 23, 2017, Defendants settled with the Consumer Financial Protection Bureau in the amount of $28.8 million for giving the run around to borrowers trying to save their homes (Exhibit M).

56. On January 12, 2018, after noticing the deceleration letter and the monthly Summary of Account Activity, Solis1 sent another debt validation letter including the Fair Credit Billing Act (FCBA) and asked about the deceleration letter and how it affected the amount owed, via certified mail #7016 1970 0000 9572 9623 received by CITI on January 17, 2018 (Exhibit N).

57. On January 24, 2018, Defendants sent a letter stating they were updating the account information to the credit bureaus but did not respond to the question about deceleration in the debt validation letter.

58. On March 15, 2018, Solis1 sent a second debt validation letter including the Fair Credit Billing Act (FCBA) to CITI via certified mail and received another response from CITI stating they were deleting the HELOC from Solis1's credit report but still did not respond regarding the deceleration.

59. On April 28, 2018, in response to the monthly Summary of Account Activity, Solis1 sent a third debt validation letter including the FCBA to CITI via certified mail including the question on how the deceleration letter affected the HELOC.

60. On May 8, 2018 CMI sent a letter regarding deleting the HELOC from Solis1's credit report but did not explain why it was being deleted.

61. On May 17, 2018 CMI sent a letter that it was waiving installment payments in the amount of $10,127.09 and late fees of $207.54 because they could be deemed uncollectible because they were not enforced within the applicable statute of limitation (Exhibit O).

62. CMI is a servicer of CITI but CMI never informed Plaintiffs that they were Plaintiffs' servicer, if that was the case, but they provided the letter regarding the amounts that could not be collected.

63. The May 17, 2018 letter confirmed Plaintiffs' suspicions that the Defendants had been reporting inaccurate amounts past due and owing to the credit report agencies, Equifax and Experian.

64. Solis1 discovered that Defendants had been reporting inaccurate information to Experian and Equifax in May 2018 due to the May 17, 2018 letter.

65. On May 21, 2018, CMI sent a letter stating the loan was in default but it still had not responded regarding how the interest was calculated – which index and margins were being used over the life of the loan.

66. On May 29, 2018, Solis1 sent CITI a fourth letter via certified mail regarding validation, the FCBA and the deceleration letter affecting the amounts owed.

67. On June 22, 2018, Solis1 sent CITI a QWR including the FCBA regarding the interest owed and how it was calculated along with the question regarding how the deceleration letter affected the amount owed (Exhibit P).

68. On July 18, 2018, CMI provided a response that did not address Solis1's concerns.

69. On July 27, 2018, Solis1 sent CITI another QWR, FCBA and validation letter via certified mail questioning how the interest was calculated and the amount due (Exhibit Q).

70. Plaintiffs received monthly statements until June 27, 2018, thereafter, Plaintiffs did not receive monthly statements in breach of the executed Home Equity Line of Credit Agreement and Disclosure.

71. Instead of responding to Solis1's QWRs and debt validation letters regarding amount due, CITI filed a second foreclosure action against Plaintiffs, Florida state case #2018-033416-CA-01, in violation of the Fair Credit Billing Act.

72. Sue Jorden, VP Document Control stated – Pursuant to an agreement, CITIMORTGAGE, INC., provides certain loan servicing activities for Citibank, N.A., the holder of the Home Equity Line of Credit Agreement (HELOC). Pursuant to a corporate resolution from CitiMortgage, Inc., I am authorized to make the representations contained in this Possession Certificate (Certificate) on behalf of Citibank, N.A. (Exhibit R).

73.  Defendants have also provided perjured and contradictory information in the state court complaint by Jennifer Ollier, Vice President – Document Control, Employed by CitiMortgage, Inc., which provides certain loan servicing for Plaintiff – [CITIBANK, N.A.] claiming the HELOC agreement is a promissory note as claimed in the state foreclosure action despite another Vice President – Document Control, Sue Jordan claiming the HELOC is a HELOC. (Exhibit S).

74. Defendants breached their Home Equity Line of Credit Agreement and Disclosure by not responding to Solis1's many letters under the Fair Credit Billing Act since November 2010.

75. In addition to joint and several liability for misconduct among joint tortfeasors, Defendants have also operated as a common enterprise, and each of them is jointly and severally liable for the acts and practices alleged herein.

76. Defendants' contradictory information to Plaintiffs have caused considerable emotional distress and mental anguish because Plaintiffs have been communicating with Defendants since November 2010 and to date, Defendants have refused to provide accurate accounting and communication regarding how the interest rate and interest amounts due were calculated over the life of the loan.

77. Plaintiffs have suffered humiliation receiving notices from realtors, loan modification companies and attorneys that their home was in foreclosure despite the multiple attempts to obtain the correct information directly from the Defendants.

78. Instead of providing accurate information, Defendants have routinely sent inaccurate and contradictory Summary of Account Statements and responses to debt validation letters, QWRs and Notice of Error for the past nine long years despite all the time and effort Plaintiffs have expended by going to the post office to dispute the amounts owed, reviewing documents sent by the Defendants and having to continually request the same information from the Defendants.

11

79. Plaintiffs' HELOC was securitized and the state foreclosure action has the wrong Plaintiff.

80. Instead of providing accurate information, Defendants have reported inaccurate information regarding interest and past amounts due to the credit bureaus and filed perjured and fraudulent foreclosure actions.

81. Defendants had Plaintiffs HELOC and had the ability to provide a complete accounting and calculation of the interest amounts due, which margins and indices were used over the life of the loan to the Plaintiffs.

82. Defendants deprived Plaintiffs of the opportunity to cure the HELOC after decelerating the loan because Defendants continued to send monthly Summary of Account Activity requesting minimum payments in the thousands of dollars without providing an accurate accounting as requested by Solis1's multiple letters.

83. Defendants have continuously reported inaccurate information to Equifax and Experian and then deleted the accounts from Solis1's credit report in order to hide their errors and liability under the Fair Credit Reporting Act and under their settlement agreement with the Consumer Financial Protection Bureau.

84. There is no deceleration clause in Plaintiff1's Home Equity Line of Credit therefore the total amount was always due after the first foreclosure was dismissed yet Defendants reported past amounts due to the Plaintiffs Monthly Account Statement and to the CRAs.

85. Defendants damaged Plaintiffs by not providing timely information regarding the interest amount due, how the interest rate was calculated so that Plaintiffs could continue to pay the HELOC and avoid foreclosure.

## **COUNT I**

## WILLFUL AND/OR NEGLIGENT VIOLATIONS OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 et seq BY DEFENDANTS CITIBANK, N.A.

86. Plaintiff alleges and incorporates the information in paragraphs 1 through 85.

87. CITI willfully and negligently violated the FCRA when it continued to report erroneous and derogatory information regarding the interest owed and past due amounts for over twenty four months to EQUIFAX and EXPERIAN after receiving Plaintiff's multiple QWRs and disputes and failing to properly re-investigate the interest amounts alleged to be owed in violation of the FCRA 15 U.S.C. § 1681s-2(a)(1)(B)(i),(ii).

88. Defendants violated 15 U.S.C. § 1681s-2(b) by its failure to assure that a proper reinvestigation was conducted after receiving Plaintiff's disputes directly and/or through the CRAs regarding the interest owed and past amounts due.  These inaccurate account reports on Plaintiff's credit report for more than twenty-four months damaged her credit score and reputation.

89. Defendants violated the Fair Credit Reporting Act, 15 U.S.C.§1681s-2(b) by failing to fully and properly investigate the Plaintiff's disputes regarding the interest due on the account, how the interest was calculated and/or by reporting inaccurately the results of such investigation.

90. As a result of this conduct, action and inaction of CITI, Solis1 suffered actual damages including without limitation, by example only and as described herein: loss of credit, damage to reputation, embarrassment, humiliation, emotional distress and mental anguish for eight years.

91. Defendants' conduct, action and inactions were willful, rendering them liable for punitive damages in an amount to be determined by the Court and/or jury pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent, entitling Solis1 to recover under 15 U.S.C. §1681o.

92. Solis1 is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court and/or jury pursuant to 15 U.S.C. §1681n and §1681o.

93. FCRA U.S.C. §1681o states:

Civil liability for negligent noncompliance (a) In general.  Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of --(1) any actual damages sustained by the consumer as a result of the failure; and (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

FCRA U.S.C. §1681n states:

(a) **In general**

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)

(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

94. (b) **Duties of furnishers of information upon notice of dispute**

(1) **In general**

After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

95. Plaintiff requested several Qualified Written Requests and debt validation letters from Defendants and they willfully and/or negligently reported to the CRAs inaccurate information about the interest amounts due, the calculation of the interest rate according to the letter from CMI on May 18, 2018 that it was waiving installment payments in the amount of $10,127.09 and late fees of $207.54 because they could be deemed uncollectible because they were not enforced within the applicable statute of limitation (Exhibit K).

96. Solis1 disputed the account with the CRAs and the CRAs requested CITI'S verification of the trade-lines.  These inaccurate account reports on Solis1's credit reports for more than two years damaged her credit score, reputation and caused lost credit opportunities.

97. Defendants knowingly and inaccurately reported a disputed account on Solis1's credit report and knowingly and willfully caused damage to Solis1 by reducing Solis1's credit score.

98. Defendants reported as Solis1's creditor when the creditor was CITIBANK, FEDERAL SAVINGS BANK and claimed amounts past due when the acceleration letter claimed all amounts are due and payable.

99. Defendants filed a foreclosure case claiming all amounts due and payable while Plaintiffs continuously disputed the interest amount owed since 2010.

**WHEREFORE**, Plaintiff, Grace Solis, demands judgment for damages against Defendants CITIBANK, N.A. for actual damages as they may bear or statutory damages, punitive damages, declaratory and injunctive relief, attorney's fees and costs, emotional distress and mental anguish and other damages if the state foreclosure succeeds and awarding such other and further relief as the Court may deem just and proper pursuant to FCRA 15 U.S.C. §1681n and §1681o and the opportunity to amend this complaint and/or additional parties after conducting appropriate discovery.

<u>**COUNTS II**</u>
**<u>WILLFUL AND NEGLIGENT VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA), FLA. STAT. §559(Part VI) BY DEFENDANTS CITIBANK, N.A. AND CITIMORTGAGE, INC.,</u>**

100. Plaintiffs allege and incorporate the information in paragraphs 1 through 85.

101. Plaintiffs are consumers within the meaning of the FCCPA, Fla. Stat. §559.55(2).

102. Defendants are debt collectors within the meaning of the FCCPA, Fla. Stat. §559.55(6).

103.  Defendants are creditors within the meaning of the FCCPA, Fla. Stat. §559.55(3).

104. Defendants willfully and negligently violated the FCCPA.  Defendants' violations include, but are not limited to the following:

105. Florida Statute 559.715 reads:

Assignment of consumer debts.--This part does not prohibit the assignment, by a creditor, of the right to bill and collect a consumer debt.  However, the assignee must give the debtor written notice of such assignment within 30 days after the assignment. The assignee is a real party in interest and may bring an action in a court of competent jurisdiction to collect a debt that has been assigned to such assignee and is in default.

106. Defendants never provided to Plaintiff notice of an Assignment of Mortgage (AOM) nor is an AOM in favor of Defendants recorded in public records.

107.  FL Statute §559.72(9) reads:

(9)  Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

108.  CITI caused a foreclosure action to be filed against Plaintiffs knowing that Plaintiffs were communicating with Defendants and asking what amounts were owed and how they were calculated for eight years.

109.  CITI falsely verified the foreclosure complaint contained a HELOC note when no such item exists.

110.  CITI filed a frivolous action against Plaintiffs while Plaintiffs were questioning the interest amounts due and their calculations for the last eight years.

111.  CITI sent monthly Summary of Account Activity that were inaccurate despite Plaintiffs requests for clarification of past amounts due including interest amounts and how the adjustable rate was calculated.

112.  FL Statute §559.72 (5) reads:

(5) Disclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason

17

to know that the other person does not have a legitimate business need for the information or that the information is false.

113. CITI continually reported inaccurate information to Experian and Equifax despite Solis1's multiple disputes directly with the Defendants and with the CRAs. Each monthly report is a separate, unique and distinct event. CITI is foreclosing on Plaintiffs and requesting all amounts due and owing, not past due amounts.

114. CMI did not respond to Solis1's request regarding why amounts were waived in response to CMI's letter stating that amounts were being waived.

115. FL Statute §559.72 (7) reads:

Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family;

116. CITI filed two foreclosure actions against Plaintiffs despite receiving certified letters over the past eight years requesting the accounting of the interest and amounts due, which were never provided.

**WHEREFORE**, Plaintiffs demand judgment for damages against CITIBANK, N.A. and CITIMORTGAGE, INC. for actual damages as they may bear or statutory damages, punitive damages, declaratory and injunctive relief, attorney's fees and costs, emotional distress, mental anguish and other damages if the state foreclosure succeeds and awarding such other and further relief as the Court may deem just and proper pursuant to Fla. Stat §559.77 and the opportunity to amend this complaint and/or additional parties after conducting appropriate discovery.

## <u>COUNT III</u>

### <u>BREACH OF CONTRACT BY DEFENDANT CITIBANK, N.A.</u>

117. Plaintiffs allege and incorporate the information in paragraphs 1 through 75.

18

118. CITI breached the Home Equity Line of Credit Agreement and Disclosure by not accurately responding to Plaintiffs' multiple Qualified Written Requests and debt validation letters pursuant to the Fair Credit Billing Act received over nine years prior to filing two foreclosure actions.

119. CITI breached the Home Equity Line of Credit Agreement by not providing the indices and margins which were utilized to calculate the interest owed despite multiple requests by Plaintiffs as early as November 2010.

**WHEREFORE,** Plaintiffs demand judgment for damages against Defendant CITIBANK, N.A. for actual damages as they may bear and/or statutory damages, punitive damages, declaratory and injunctive relief, attorney's fees and costs, emotional distress and mental anguish for breach of contract and other damages if the state foreclosure succeeds and awarding such other and further relief as the Court may deem just and proper and the opportunity to amend this complaint and/or additional parties after conducting appropriate discovery.

## .COUNT IV

## WILLFUL AND NEGLIGENT VIOLATIONS OF THE FAIR CREDIT BILLING ACT 15 U.S.C. § 1666 BY DEFENDANTS CITIBANK, N.A. AND CITIMORTGAGE, INC.

120. Plaintiffs allege and incorporate the information in paragraphs 1 through 75.

121. 15 U.S. Code § 1666.Correction of billing errors

   (a)WRITTEN NOTICE BY OBLIGOR TO CREDITOR; TIME FOR AND CONTENTS OF NOTICE; PROCEDURE UPON RECEIPT OF NOTICE BY CREDITOR
   If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives at the address disclosed under section 1637(b)(10) of this title a written notice (other than notice on a payment stub or other payment medium supplied by the creditor if

the creditor so stipulates with the disclosure required under section 1637(a)(7) of this title) from the obligor in which the obligor—

(1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,

(2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and

(3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error,

the creditor shall, unless the obligor has, after giving such written notice and before the expiration of the time limits herein specified, agreed that the statement was correct—

(A)     not later than thirty days after the receipt of the notice, send a written acknowledgment thereof to the obligor, unless the action required in subparagraph (B) is taken within such thirty-day period, and

(B) not later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice and prior to taking any action to collect the amount, or any part thereof, indicated by the obligor under paragraph (2) either—

(i) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or

(ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. In the case of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered,

mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.

After complying with the provisions of this subsection with respect to an alleged billing error, a creditor has no further responsibility under this section if the obligor continues to make substantially the same allegation with respect to such error.

**(b)BILLING ERROR**For the purpose of this section, a "billing error" consists of any of the following:

**(1)** A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

**(2)** A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

**(3)** A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

**(4)** The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

**(5)** A computation error or similar error of an accounting nature of the creditor on a statement.

**(6)** Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

**(7)** Any other error described in regulations of the Bureau.

**(c)ACTION BY CREDITOR TO COLLECT AMOUNT OR ANY PART THEREOF REGARDED BY OBLIGOR TO BE A BILLING ERROR** For the purposes of this section, "action to collect the amount, or any part thereof, indicated by an obligor under paragraph (2)" does not include the sending of statements of account, which may include finance charges on amounts in dispute, to the obligor following written notice from the obligor as specified under subsection (a), if—

**(1)** the obligor's <u>account</u> is not restricted or closed because of the failure of the obligor to pay the amount indicated under paragraph (2) of subsection (a), and

**(2)** the <u>creditor</u> indicates the <u>payment</u> of such amount is not required pending the <u>creditor</u>'s compliance with this section.

Nothing in this section shall be construed to prohibit any action by a <u>creditor</u> to collect any amount which has not been indicated by the obligor to contain a billing error.

**(d) RESTRICTING OR CLOSING BY CREDITOR OF ACCOUNT REGARDED BY OBLIGOR TO CONTAIN A BILLING ERROR** Pursuant to regulations of the <u>Bureau</u>, a <u>creditor</u> operating an open end <u>consumer credit</u> plan may not, prior to the sending of the written explanation or clarification required under paragraph (B)(ii), restrict or close an <u>account</u> with respect to which the obligor has indicated pursuant to subsection (a) that he believes such <u>account</u> to contain a billing error solely because of the obligor's failure to pay the amount indicated to be in error. Nothing in this subsection shall be deemed to prohibit a <u>creditor</u> from applying against the <u>credit</u> limit on the obligor's <u>account</u> the amount indicated to be in error.

**(e) EFFECT OF NONCOMPLIANCE WITH REQUIREMENTS BY CREDITOR**

Any <u>creditor</u> who fails to comply with the requirements of this section or <u>section 1666a of this title</u> forfeits any right to collect from the obligor the amount indicated by the obligor under paragraph (2) of subsection (a) of this section, and any <u>finance charges</u> thereon, except that the amount required to be forfeited under this subsection may not exceed $50.

122. CITI failed to respond to Plaintiffs request for clarification regarding interest amount owed payment calculations for eight years.

123. CITI filed a foreclosure despite not responding to Plaintiffs certified letters pursuant to the FCBA.

124. CMI refused to respond to Solis1's 2018 letter that was sent in response to CMI's letter waiving over $10,000 in interest and fees wherein Solis1 was requesting how and why were these amounts waived and their calculations.

**WHEREFORE**, Plaintiffs demand judgment for damages against Defendants CITIBANK, N.A. and CITIMORTGAGE, INC. for actual damages as they may bear and/or statutory

damages, punitive damages, declaratory and injunctive relief, attorney's fees and costs, emotional distress and mental anguish pursuant to the Truth In Lending Act §1640 and awarding such other and further relief as the Court may deem just and proper if the state foreclosure succeeds and the opportunity to amend this complaint and/or additional parties after conducting appropriate discovery.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues so triable as a matter of law.

Respectfully submitted this 7th day of August 2020.

Grace Solis
730 86th Street
Miami Beach, FL  33141

Shirley Solis
730 86th Street
Miami Beach, FL  33141

23

damages, punitive damages, declaratory and injunctive relief, attorney's fees and costs, emotional distress and mental anguish pursuant to the Truth In Lending Act §1640 and awarding such other and further relief as the Court may deem just and proper if the state foreclosure succeeds and the opportunity to amend this complaint and/or additional parties after conducting appropriate discovery.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues so triable as a matter of law.

Respectfully submitted this 7th day of August 2020.

Grace Solis
730 86th Street
Miami Beach, FL  33141

Shirley Solis
730 86th Street
Miami Beach, FL  33141

23